LORI A. THOME, Plaintiff-Appellant, v. RONALD E. PALMER *et al.*,
Defendants-Appellees.

Third District No. 3—85—0078

Opinion filed February 27, 1986.

John L. Swartz, Carol J. Fines, and R. Mark Mifflin, all of Giffin, Winning, Lindner, Cohen & Bodewes, P.C., of Springfield, for appellant.

Murvel Pretorius, Jr., of McConnell, Kennedy, Quinn & Johnston, of Peoria, and Jerald E. Jackson and Mark E. Jackson, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellees.

JUSTICE WOMBACHER delivered the opinion of the court:

The plaintiff claims that the trial court committed error in granting a directed verdict in favor of the Sisters of the Third Order of St. Francis, Dr. Norman Meyn and Dr. Thomas Vinge, and entering judgment on the jury verdicts in favor of Dr. Ronald Palmer and Orthopedic Associates, S.C. We affirm.

The facts of the case are not complicated. Lori A. Thome fell down some stairs while attending a party, and her injuries were treated at St. Francis Hospital, which is operated by the defendants, the Sisters of the Third Order of St. Francis. The plaintiff complained of severe pain in her right wrist, which was obviously deformed. After examination in the emergency room by then-resident doctors Vinge and Meyn, the plaintiff's right forearm was X-rayed and she was admitted to the hospital overnight. On the following day, Dr. Palmer performed a closed manipulation to reduce the wrist fracture, after which a cast was applied.

Sometime after the removal of the cast, approximately two months later, the plaintiff's right elbow was discovered to be dislocated, so Dr. Palmer performed surgery to reduce the dislocated elbow. When the plaintiff regained consciousness following the operation, she reported numbness in the fingers of her right hand. The numbness was due to an ulnar nerve injury, and the plaintiff later again underwent surgery by a neurosurgeon, who found that the nerve had been stretched.

The plaintiff charged that the defendants failed to discover and treat her dislocated elbow, and that Dr. Palmer negligently performed the surgery to reduce the dislocation, thereby damaging the ulnar nerve by stretching it.

Specifically as to the hospital residents, Doctors Vinge and Meyn, the plaintiff claimed that they failed to examine her elbow in the emergency room. The defendants testified that they did examine the elbow, but failed to document their findings in the emergency room records because they found nothing abnormal. Plaintiff attempted to submit into evidence certain hospital regulations and bylaws pertain-

ing to keeping complete medical records, which required the inclusion of "all pertinent findings resulting from an assessment of all the systems of the body." The trial judge granted the defendants' motion *in limine* to exclude this evidence on the basis that the plaintiff failed to establish sufficient relevance and a causal connection between an alleged violation of the bylaws and the injury.

■ The trial court's ruling was correct. To be admissible, evidence must be both relevant and material. Relevancy exists where a fact offered tends to prove a fact in controversy or renders a matter in issue more or less probable. (*Marut v. Costello* (1966), 34 Ill. 2d 125, 214 N.E.2d 768.) The uncontroverted evidence established that it was standard to omit normal findings from the patient records. Consequently, evidence of a violation of the bylaws was irrelevant because it would not tend to prove that the defendants did not examine the plaintiff's elbow.

Nor did the plaintiff show that a failure to adhere to the bylaws proximately caused her injury. Common sense dictates that if in the course of their examination of the plaintiff the defendants had discovered her elbow to be dislocated, they would have done more than to merely record it. Presumably, they would have ordered an X ray taken and seen that the plaintiff received the necessary treatment. Thus, the recording or nonrecording of their findings, while not inconsequential from the standpoint of maintaining records, was an event of no significance with respect to causation.

■ The next issue we shall address is whether the trial court erred in permitting the defendants' expert witness to render his medical opinion despite the fact that he had reviewed the discovery depositions of the defendant doctors. We find no error.

Under *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140, Illinois adopted the standards of Rules 703 and 705 of the Federal Rules of Evidence so that an expert witness may base an opinion on facts not in evidence if they are of a type reasonably relied upon by experts in the particular field in forming opinions. The rationale behind the *Wilson* decision was judicial economy and reliability of the date which was discoverable. *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 473 N.E.2d 1322.

Deposition testimony of other doctors, pharmacists, and the plaintiff was held to be within the scope of Federal Rule 703 in *Hatfield v. Sandoz-Wander, Inc.* (1984), 124 Ill. App. 3d 780, 464 N.E.2d 1105, where the defendant's medical experts relied upon such information in forming their opinions. The court based its holding upon the Advisory

Committee Notes to Rule 703, which recognize that:

"[A] physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors ***." Fed. R. Evid. 703, Advisory Committee Notes.

The court in *Hatfield* concluded that the content of the discovery depositions relied upon by the defense experts was identical to the kind of statements contemplated by the rule, and the sworn deposition testimony was not shown to be any less reliable than the unsworn statements to which the Advisory Committee referred in its comment. We find *Hatfield* to be persuasive.

Although the depositions reviewed by the defendant's experts in *Hatfield* were not those of the defendants themselves, we are not convinced that this fact significantly distinguishes the present case, since the plaintiff was afforded an ample opportunity to test the basis of the expert's opinion through cross-examination. This was the safeguard of fairness envisioned by our supreme court in *Wilson*, wherein it noted, "Under Rule 705 the burden is placed upon the adverse party during cross-examination to elicit the facts underlying the expert opinion. [Citation.]" *Wilson v. Clark* (1981), 84 Ill. 2d 186, 194, 417 N.E.2d 1322.

■ The final point of error asserted by the plaintiff is the trial court's ruling that the plaintiff failed to establish the standard of care for taking an X-ray view of the forearm, and directing a verdict in favor of St. Francis Hospital. The technician who X-rayed Lori Thome's arm testified that as a student in the St. Francis radiological school she was instructed from a textbook which taught that a forearm view should include both the wrist and the elbow. She further testified that the policy, practice and teaching in the X-ray department itself was to include the "joint of interest" and as much of the long bone as possible. In accordance with the latter procedure, the wrist and forearm X ray she took of the plaintiff did not include the elbow.

The plaintiff maintains that the hospital is bound by the method taught in the textbook used in its radiological school and contends that the failure to include the elbow joint in the X rays of Lori Thome's arm was a violation of the standard of care. The hospital argues that the plaintiff was attempting improperly to establish the standard of care by using the textbook as substantive evidence, but at best she succeeded only in proving that there are two alternate methods of positioning a forearm for X ray.

After viewing all the evidence in its aspect most favorable to the plaintiff, as mandated by *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, we find that the trial court properly directed a verdict for the hospital.

■ The general rule in medical malpractice cases is that expert testimony (*Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301) or something rising to the level of expert testimony (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253; *Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 303 N.E.2d 392) is needed to establish the standard of care.

In the present case, the plaintiff sought to establish the standard applicable to the defendant's conduct by construing the hospital's use of a certain textbook in its radiological school as an admission that it had adopted the textbook method exclusively as the standard of care in its radiological department. We agree with the trial court that the plaintiff failed to meet her burden of establishing the standard of care.

Even if the hospital did teach its students, via the textbook in question, that a forearm view should include both joints, the plaintiff didn't show that the deviation from that method constituted malpractice. The same witness who testified that she was instructed to follow the textbook testified that there was a second and equally acceptable method used in the radiology department. There was no evidence that the defendant failed to adhere to the second method, and no evidence that the procedure used by defendant was unacceptable in the medical community.

In affirming a directed verdict for the defendants in *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 381 N.E.2d 279, the supreme court commented on the similar lack of evidence of standard of care in that case:

> "In sum, the evidence presented two conflicting opinions in the medical community concerning the proper procedure to be observed under the circumstances. Absent is any statement of a standard Dr. Tiesenga was required to follow in this case." 72 Ill. 2d 249, 260, 381 N.E.2d 279.

> "Without evidence of a standard of care to which the defendant doctors were bound to adhere there is nothing against which a jury could measure the defendants' conduct and no means for it to resolve the factual question of whether the defendants deviated from the established standard and, therefore, were negligent." 72 Ill. 2d 249, 262, 381 N.E.2d 279.

Here the trial court was presented with testimony of the existence of alternate methods of proceeding, but the plaintiff failed to establish that the method used by the defendant was not considered proper by the medical community. Therefore, the court was correct in ruling that the plaintiff's proof was lacking the requisite element of the standard of care.

We affirm.

HEIPLE, P.J., and BARRY, J., concur.