LORETTA CWIERTNIA, Adm'x of the Estate of Ivar Hjelmgren, Deceased, Plaintiff-Appellant, v. JOHN ZABOROWSKI, Defendant-Appellee (Ravenswood Hospital Medical Center et al., Defendants).

First District (3rd Division)   No. 1—88—2261

Opinion filed December 20, 1989.

Larry Karchmar, of Larry Karchmar, Ltd., of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Loretta Cwiertnia, administratix of the estate of Ivar Hjelmgren, alleged in her medical malpractice complaint that defendant Dr. John Zaborowski was negligent in caring for Hjelmgren because he did not diagnose Hjelmgren's condition. She appeals from

the order granting Dr. Zaborowski's motion for summary judgment.

Plaintiff's first amended complaint alleged that on August 25, 1982, Hjelmgren was admitted as a patient to Ravenswood Hospital. Dr. Zaborowski was alleged to have breached his duty by negligently failing to diagnose decedent's condition of bilateral pulmonary embolisms and by negligently failing to perform tests which would have divulged the embolisms. Hjelmgren allegedly suffered from massive bilateral pulmonary embolisms which resulted in his death in the hospital on August 29, 1982.

Dr. Zaborowski moved for summary judgment on the basis that his failure to note in the hospital chart that he considered the diagnosis of pulmonary embolism had no effect on the care rendered to Hjelmgren and was not the proximate cause of the injury, because Drs. Lloyd Callaway, Jr., and Neil Kramer had discussed the possibility of pulmonary embolism. Plaintiff argued in her response to the motion that whether Drs. Callaway and Kramer discussed the possibility of pulmonary embolism was a question of fact, because their consideration of pulmonary embolism was not reflected in the medical records. Dr. Zaborowski did not dispute this lack of evidence in the medical records.

Plaintiff's expert Dr. Leonard Braudo testified at his deposition that Dr. Zaborowski did not deviate from the standard of care and that the medical chart entries indicated that Dr. Zaborowski took orders from his superiors.

Dr. Zaborowski testified at his deposition that he began his residency in internal medicine at Ravenswood Hospital in July 1982. He took Hjelmgren's history upon his admittance to the hospital, and Hjelmgren informed him that he had deep vein thrombosis in 1973 but Dr. Zaborowski did not recall being informed of a history of pulmonary embolism. The nursing admission assessment indicated pulmonary embolism in 1967 but Dr. Zaborowski did not specifically recall reviewing it, although he usually looked at all the nursing report sheets. Dr. Zaborowski recalled speaking with Dr. Callaway, Hjelmgren's attending physician, only at the time of Hjelmgren's admission. Dr. Zaborowski related his findings to Dr. Kramer, who was a consulting physician.

Dr. Zaborowski further testified that he rendered diagnoses in conjunction with his superiors, which included a second-year resident, the attending physician, the consulting physicians, and the cardiologist in charge of the coronary care unit. As a resident he was qualified to examine patients and, under the supervision of other physicians, to write histories and physical examination findings and to

write and sign orders. He was not qualified to do anything independently. He could render an opinion or impression that an individual suffered from pulmonary embolism based on clinical symptoms but he would have to discuss it with his superiors.

Dr. Lloyd Callaway, Jr., testified at his deposition that he was board certified in the practice of family medicine. One of his associates admitted Hjelmgren into the hospital; Dr. Callaway was the attending physician. He was aware his patient had a history of pulmonary embolism. Dr. Callaway talked to the director of the cardiac care unit, the residents involved in the case, and Dr. Kramer, a cardiologist, whom he brought in as a consultant. He testified the diagnostic possibility of pulmonary embolism was discussed. He did not recall specifically when the conversation took place and who was present, and the conversation was not noted in the hospital records. He did not specifically remember discussing pulmonary embolism with Dr. Zaborowski. Neither he nor Dr. Zaborowski suggested that diagnostic measures be taken to rule out pulmonary embolism, and he stated that, in fact, pulmonary embolism was dismissed on the basis of lack of any clinical evidence.

Dr. Neil Kramer, who was certified in internal medicine and in cardiology, testified at his deposition that a pulmonary embolism is a blood clot that migrates from one part of the circulation to another. He was aware that Hjelmgren had a history of pulmonary embolism, and the possibility of this diagnosis was considered. He spoke to Dr. Callaway about pulmonary embolism, and they thought that it was a very remote possibility based on the fact that Hjelmgren had none of the clinical findings of a pulmonary embolism. He read Dr. Zaborowski's notes and may have spoken to him but did not recall any specific date or discussing Hjelmgren's treatment with Dr. Zaborowski.

Dr. David W. Cugell, whose subspeciality was pulmonary medicine, testified at his deposition that he had been hired as an expert by plaintiff. He saw nothing in the hospital record indicating that pulmonary embolism was considered, and he was puzzled by this absence. He also was astonished that Drs. Kramer and Callaway were surprised at the postmortem finding of pulmonary embolism after discussing its possibility.

Based upon Dr. Zaborowski's statements at his deposition that he had no independent status and had a training position, Dr. Cugell did not think it appropriate to ascribe any responsibilities to him. In general, resident physicians do not have direct patient care responsibilities but care for patients under the direction of and responsibility of a

more senior person. But according to Dr. Cugell, Dr. Zaborowski's prior training and his status as a resident, even though he was only in the first month of his residency, should have created an "attitude of concern and suspicion" for pulmonary embolism that he apparently did not express. Dr. Zaborowski's duty would have been at least to have indicated in the record that he considered the diagnosis of pulmonary embolism in order to bring it to the attention of his superiors. It would have been appropriate for Dr. Zaborowski to have discussed the diagnosis with the attending physicians.

Dr. Cugell also testified that if Dr. Zaborowski had indicated pulmonary embolism in the record and if Dr. Callaway and/or Dr. Kramer considered this possible diagnosis and disagreed with it, then Dr. Zaborowski would have complied with the applicable standard of care. As Dr. Zaborowski had the junior status of trainee, if in fact Drs. Callaway and Kramer considered pulmonary embolism, then his failure to note in the chart a suspicion or differential diagnosis of pulmonary embolism would have had no effect because clearly Drs. Callaway and Kramer made patient care decisions. Furthermore, Drs. Callaway and Kramer had no obligation to act on anything that Dr. Zaborowski discussed.

■ The threshold issue is whether the order included the necessary language of appealability. The order granted summary judgment in favor of only one defendant and therefore remaining were the claims against the other defendants. The order in the instant case stated that it was "final and appealable, the court finding no just reason for delay of enforcement therefrom."

Supreme Court Rule 304(a) states in part:

> "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding *that there is no just reason for delaying enforcement or appeal.*" (Emphasis added.) (107 Ill. 2d R. 304(a).)

The purpose of the rule is to discourage piecemeal appeals in the absence of just reason and to remove the uncertainty which exists when a final judgment is entered on fewer than all the matters in the controversy. Non-final judgments are subject to revision at any time before the entry of a judgment adjudicating all claims, rights, and liabilities of all the parties. *Hamer v. Lentz* (1987), 155 Ill. App. 3d 692, 695, 508 N.E.2d 324.

In *Hamer*, the order stated that " '[t]his is a final and appealable order.' " (155 Ill. App. 3d at 695.) The court held that the word "fi-

nal" was not the equivalent of the word "enforceable" in Rule 304(a) and that therefore the order was not appealable. In *First National Bank v. Lewis* (1987), 163 Ill. App. 3d 160, 161, 516 N.E.2d 552, the following language was also held to be insufficient for an appeal under Rule 304(a) because it lacked language of finality and appealability: " 'There is no just reason to delay enforcement of this order with respect to the ruling.' "

In contrast, the order in *Lawyers Title Insurance Corp. v. Kneller* (1988), 172 Ill. App. 3d 210, 213, 525 N.E.2d 1155, was held to confer appellate jurisdiction even though it did not include the exact Rule 304(a) language and omitted language of enforceability. The order stated that " 'pursuant to Supreme Court Rule, being section 304(a) of chapter 110A, Illinois Revised Statutes, there is no just cause for delaying an appeal from the order entered herein.' " (172 Ill. App. 3d at 212.) The court held that the order's citation to the rule constructively fulfilled the rule's technical language requirement.

Although the order in the instant case did not include the exact Rule 304(a) language, the references to finality, appealability and enforceability demonstrated the intent to permit appeal from the order, and therefore, we hold that this court has jurisdiction.

■ Summary judgment will be granted if the pleadings, depositions, admissions, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) The right to present a factual basis for a case where a material dispute exists may not be preempted by summary judgment. (*Fruzyna v. Walter C. Carlson Associates, Inc.* (1979), 78 Ill. App. 3d 1050, 1053, 398 N.E.2d 60.) The right to summary judgment must be clear beyond question. *Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 741, 415 N.E.2d 434.

Plaintiff argues that Dr. Zaborowski's motion for summary judgment should not have been granted because there was an issue of material fact as to whether the defendant deviated from the applicable standard of care when he failed to note in decedent's chart or discuss with the attending physician the need for diagnostic testing in order to diagnose or at least rule out the possibility of pulmonary embolism and thereby preventing decedent's demise. Specifically, plaintiff argues that: (1) Dr. Cugell's testimony established a question of fact as to whether Dr. Zaborowski breached a standard of care; (2) the lack of a notation in Hjelmgren's hospital records as to the consideration of the diagnosis created an issue of fact as to whether Dr. Zaborowski's actions proximately caused Hjelmgren's death; and (3) the trial court

erred in relying upon Drs. Kramer's and Callaway's "self-serving statements" that they had discussed pulmonary embolism.

Dr. Zaborowski argues that Dr. Cugell's testimony did not establish an issue of fact concerning whether any breach of the standard of care by Dr. Zaborowski proximately caused the injury. He relies upon Dr. Cugell's testimony that if Drs. Callaway and Kramer had considered pulmonary embolism, any failure by Dr. Zaborowski to note in the chart a suspicion or differential diagnosis of pulmonary embolism would have had no effect. He notes the testimony of Drs. Kramer and Callaway that they had indeed considered the diagnosis and argues that, therefore, there was no issue whether the diagnosis was actually considered. Dr. Zaborowski argues that the lack of inclusion of any indication in the hospital chart was consistent with the doctors' testimony.

Dr. Zaborowski cites *Thome v. Palmer* (1986), 141 Ill. App. 3d 92, 489 N.E.2d 1163, to support his argument that this lack of notation did not create an issue of fact concerning whether Drs. Kramer and Callaway discussed the possibility of pulmonary embolism. Plaintiff there claimed that hospital residents failed to examine her elbow. The residents testified that they did examine her elbow but did not document their findings because nothing abnormal was found. Plaintiff was not permitted to present evidence of a hospital regulation that required inclusion in medical records all findings resulting from an assessment of body systems. Dr. Zaborowski claims that the logic in *Thome* was that a physician's failure to note in the chart those matters which he feels are of no consequence is irrelevant. But the uncontroverted evidence had been that in that hospital it was standard to omit normal findings from patient records. In contrast, in the instant case there was no uncontroverted evidence that the failure to include diagnoses considered remote in hospital records was standard practice. In fact, Dr. Cugell indicated his puzzlement over the absence of a notation of pulmonary embolism in the record.

■ The fact finder could infer from the lack of notation in the records either that pulmonary embolism was not considered or that it was considered but not noted. If different inferences could be drawn from evidence, then a triable issue exists. (*Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 642, 411 N.E.2d 1168.) An issue may be resolved as a matter of law only if all reasonable minds would be compelled to reach the same conclusion. (*Laflin v. Estate of Mills* (1977), 53 Ill. App. 3d 29, 31, 368 N.E.2d 522.) It is not the trial court's function in a motion for summary judgment to resolve doubts about credibility in order to reach a decision. *Schuster v.*

*East St. Louis Jockey Club, Inc.* (1976), 37 Ill. App. 3d 483, 486, 345 N.E.2d 168.

Even if Drs. Kramer and Callaway had discussed pulmonary embolism, it is not clear beyond a reasonable doubt that Dr. Zaborowski's failure to note pulmonary embolism on the chart or to otherwise raise the possibility of this diagnosis would not have contributed to Drs. Kramer's and Callaway's failure to diagnose pulmonary embolism. If a jury should believe that Drs. Kramer and Callaway never actually discussed pulmonary embolism, then the jury might also decide that if Dr. Zaborowski would have brought the possibility of pulmonary embolism to their attention, the decedent would have received the necessary medical services and survived.

Dr. Zaborowski also argues that Dr. Cugell conceded that any failure by Dr. Zaborowski to note the suspicion of pulmonary embolism on the chart would have had no effect, considering his junior status and since decisions about patient care were clearly the responsibility of Drs. Callaway and Kramer. Dr. Cugell's testimony was that there would have been no effect *if in fact* the doctors had considered pulmonary embolism. Dr. Cugell did not testify that if Drs. Callaway and Kramer had *not* discussed the possibility of pulmonary embolism, Dr. Zaborowski's breach of care would still have had no effect because of his junior status and their responsibility for the patient's care.

There was a genuine issue of material fact as to whether Drs. Kramer and Callaway considered the diagnosis of pulmonary embolism so that it could not be held as a matter of law that any breach of care by Dr. Zaborowski could not have proximately caused Hjelmgren's death. The trial court therefore erred in granting the motion for summary judgment. It is unnecessary to discuss plaintiff's alternative argument that the trial court erred in relying upon what she characterizes as the self-serving statements of Drs. Callaway and Kramer.

The judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

FREEMAN, P.J., and WHITE, J., concur.