JOHN SCHULENBURG, Plaintiff-Appellant, v. REXNORD, INC., Defendant-Appellee.

First District (5th Division)   No. 1—91—3328

Opinion filed June 30, 1993.—Rehearing denied February 2, 1994.

Jeffrey M. Goldberg & Associates, Ltd., of Chicago (Jeffrey M. Goldberg, James M. Geraghty, and Roy P. Amatore, of counsel), for appellant.

McDermott, Will & Emery, of Chicago (John R. Doyle and Cathy Houston McNeil, of counsel), for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, John Schulenburg, appeals from the order of the circuit court granting summary judgment in favor of the defendant, Rexnord, Inc. (Rexnord), pursuant to section 2—1005 of the Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005.) On November 7, 1986, plaintiff was injured while operating a cement finishing machine manufactured by Rexnord. Plaintiff brought suit against Rexnord, Plote, Inc., Higgins Asphalt Company, Inc., and the Village of Schaumburg on November 6, 1987. Defendant Rexnord moved for summary judgment on the basis that plaintiff's injury was proximately caused by the alteration of the Rexnord finishing machine by plaintiff's employer. On October 23, 1990, the initial circuit court judge granted summary judgment, holding that as a matter of law plaintiff's injury was caused by his employer's addition of a "zerk" to

the finishing machine. On September 6, 1991, a subsequent circuit court judge denied plaintiff's motion for reconsideration and found that there was no just reason to delay the enforcement or appeal of the order.

We reverse and remand.

BACKGROUND

On November 7, 1986, Schulenburg was operating a Rexnord FAR 306 concrete finishing machine owned by his employer, Milburn Brothers Construction Company. A finishing machine is used to smooth out the concrete previously laid on the road by a machine called a spreader. The finishing machine is composed of three units: a central unit which contains the operator's deck, and two units called screeds which are attached to the front and rear of the central unit.

Prior to the accident, plaintiff left the operator's deck and stepped onto the front screed. The finishing machine was still moving forward at this time, albeit at a creeping pace. The accident occurred when plaintiff was sitting or kneeling on top of the front screed and was reaching back, over the front wall of the central unit, into the open area circumscribed by the central unit's sides. Plaintiff was in this position so that he could brush aside the loose stones which the front screed had passed over. If plaintiff did not brush the stones away, the concrete surface of the roadway would be uneven. Normally, a laborer performed this function, but plaintiff was unable to locate a laborer at the time of the accident.

The open area that plaintiff was reaching into contained an unguarded rotating shaft. While plaintiff was clearing the stones away, his coat sleeve began to wrap around the rotating shaft, pulling plaintiff toward the shaft and tearing off his arm from above the elbow.

The shaft involved in Schulenburg's accident controls the movements of the machine's front wheels and is located in the front of the machine between the operator's deck and the front screed below the level of the screed. The shaft consists of two metal cylinders that rotate in a circular fashion. One cylinder fits inside the other, and the smaller cylinder can be moved in and out of the larger cylinder in order to accommodate screeds with different widths.

As originally designed, manufactured, and sold, the shaft on the finishing machine was to be lubricated manually by spreading grease on the outside of the smaller of the two cylinders that make up the shaft. Plaintiff stated that he personally greased the cylinders in this fashion for many years. Around 1981, plaintiff's employer added two

zerk grease fittings to the shaft in order to simplify the lubrication process.

A zerk fitting is a small piece of metal that has a hole through the middle of it into which grease is inserted. The zerk fitting was installed by cutting a hole in the larger of the two cylinders and by then placing the zerk in the hole of the larger cylinder. The zerk fitting protrudes from the outer surface of the larger cylinder.

Plaintiff initially filed suit on November 6, 1987. This appeal concerns plaintiff's sixth amended complaint, filed on or about December 23, 1989. In count III of his sixth amended complaint, plaintiff alleged that Rexnord negligently manufactured a concrete finishing machine that caused plaintiff's injury.

Plaintiff's deposition was taken on May 1, 1989, and in his deposition, plaintiff gave contradictory accounts of how his coat became caught in the rotating shaft. At one point plaintiff unequivocally stated that he did not specifically know what caught his arm. At other points, he answered affirmatively when asked if it was the zerk which protruded from the rotating shaft which caught his arm.

On March 14, 1990, Rexnord filed a motion for summary judgment. Rexnord argued that it was not a proximate cause of plaintiff's injury because Rexnord did not design, manufacture or sell the machine with the part (a zerk grease fitting) that caused plaintiff's injury, and that plaintiff had admitted that the zerk grease fitting had caused his injury. In support of its motion, Rexnord attached the deposition transcript of the plaintiff. Defendant also attached the affidavit of Earl Thayer, Rexnord's product compliance manager, who testified that the zerk fitting was not part of the concrete finishing machine as sold by Rexnord.

In response to the motion, plaintiff attached the affidavit of Robert Ackert, an employee of Milburn Brothers Construction Company. Mr. Ackert testified that he came to the aid of Schulenburg immediately after the accident and that he was the person who actually removed plaintiff's severed arm from the drive shaft. He testified that he observed that the plaintiff's arm was located at a point on the shaft away from the zerk and that no part of plaintiff's arm or jacket was engaged on the zerk fitting when he removed the arm from the shaft. He also testified that he had observed that there were areas of concrete build-up on the shaft and that in some places the level of build-up was equal to or greater than the height of the zerk fitting.

Plaintiff also cited the discovery deposition of Rexnord's expert, Earl Thayer. In his deposition, Thayer admitted that it was foreseeable that clothing could become caught on an unguarded power trans-

mission shaft, including a smooth shaft. Thayer admitted that Rexnord knew that the power transmission shaft on its machine would accumulate concrete everywhere, including the shaft. He further stated that concrete is an adhesive, and once it lands on something, it tends to accumulate more concrete or other debris. Thayer conceded that as a practical matter, the shafts are cleaned infrequently, only when the operator wished to adjust the size and length of the rotating shaft.

In its reply, Rexnord attached additional materials tending to support its theory that the zerk caused the plaintiff's injury. For example, Rexnord attached the deposition testimony of plaintiff's supervisor, Guy Kowalski, who was one of the first persons on the scene at the time of the accident. Kowalski testified that it was the zerk fitting which caught plaintiff's jacket. However, Kowalski did not actually observe the accident and, therefore, has no personal knowledge of how plaintiff's arm became caught on the rotating shaft.

On October 23, 1990, the circuit court granted defendant's motion for summary judgment. At the hearing, the judge indicated that the basis for his decision was that plaintiff's deposition established that the zerk fitting added by plaintiff's employer was the proximate cause of plaintiff's injury. Plaintiff moved to reconsider. In the interim, the initial circuit court judge was elevated to the Illinois Appellate Court, and the motion was heard by a second judge. On September 6, 1991, the circuit court denied plaintiff's motion to vacate the initial order granting summary judgment in favor of Rexnord, and entered an order finding that there was no just reason to delay enforcement or appeal of the order. This appeal followed.

OPINION

Plaintiff raises three issues on appeal: (1) whether the trial court erred in granting summary judgment because a genuine issue of fact existed regarding how plaintiff's coat became entangled in the rotating shaft of the finishing machine; (2) assuming that plaintiff's coat was caught by the zerk, whether the trial court erred in concluding that, as a matter of law, the zerk was the sole proximate cause of the injury; and (3) whether the second circuit court judge applied an improper standard of review to the initial judge's order granting summary judgment in favor of Rexnord.

A trial court should grant summary judgment only when the pleadings, depositions, admissions, and affidavits establish there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Quality Lighting, Inc. v. Ben-*

*jamin* (1992), 227 Ill. App. 3d 880, 883; *Sons v. Taylor* (1991), 219 Ill. App. 3d 923, 925.) The purpose of the summary judgment procedure is not to try an issue of fact, but rather to determine whether a triable issue of fact exists. (*Quality Lighting*, 227 Ill. App. 3d at 883; *Sloan v. Jasper County Community Unit School District No. 1* (1988), 167 Ill. App. 3d 867, 870.) Although the use of summary judgment is encouraged as an aid to the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.

■ An appellate court reviews summary judgment orders *de novo*. (*Demos v. National Bank* (1991), 209 Ill. App. 3d 655, 659-60.) The court must construe the evidence strictly against the movant and liberally in favor of the opponent. (*Quality Lighting*, 227 Ill. App. 3d at 884.) A reviewing court will reverse the trial court's grant of summary judgment if it determines that a genuine issue of material fact exists. *Quality Lighting*, 227 Ill. App. 3d at 884.

Plaintiff first contends that the trial court erred in granting summary judgment because there was a genuine issue of material fact about whether plaintiff's coat in fact was caught on the zerk.

The record indicates that the trial court relied solely on the plaintiff's deposition testimony in reaching its conclusion that the zerk caused plaintiff's injury. In his deposition, plaintiff gave contradictory accounts of how his coat became caught in the rotating shaft. At one point plaintiff unequivocally stated that he did not specifically know what caught his arm:

"Q. Okay, Now, what was your first sensation of being caught?

A. The knowledge that my arm was going and I couldn't pull it back.

Q. Okay, did you feel that any particular part of your body, you clothing, was snagged?

A. I felt that probably my coat obviously was caught on something.

* * *

Q. At the moment that you sensed that you were caught, did you know what you were caught on?

A. Not specifically. I knew I was caught.

Q. Okay. But the sense of being caught by something, your right arm being caught by something, was a complete surprise to you at that point.

A. Yes."

At other points in plaintiff's deposition, he answered affirmatively when asked if it was the zerk which protruded from the rotating shaft which caught his arm. During plaintiff's deposition, plaintiff's attorney, Ms. Sweeney, asked the following questions and plaintiff gave the following testimony:

"Q. —[T]he actual area, Mr. Schulenburg, where your arm got caught, is actually obscured; is that right?

A. Yes.

Q. So you're going to mark where the zerk was, where your arm got caught?

A. Yes."

Later during questioning by John Doyle, attorney for Rexnord, plaintiff was asked the following questions and plaintiff gave the following testimony:

"Q. Did your coat get caught first?

A. I think so, yes.

Q. And it got caught on a zerod?

MS. SWEENEY: On a what?

THE WITNESS: On a zerk, yeah.

BY MR. DOYLE:

Q. Zerk. Would you be able to locate that zerk on the original machine if we went out to the site?

A. Yes.

Q. Okay. I mean it's visible, it can be seen?

A. Yes."

It is on the basis of this testimony that the trial court concluded that the zerk caught plaintiff's coat. Plaintiff argues that the trial court erred in concluding that no disputed fact existed about whether the zerk caught plaintiff's coat. Plaintiff maintains that the deposition testimony is inconclusive.

In contrast, defendant argues that plaintiff has admitted that the zerk did in fact catch his coat and he should not be allowed to create a genuine issue of fact by contradicting himself. Defendant cites *Pedersen v. Joliet Park District* (1985), 136 Ill. App. 3d 172, in support of his argument.

In *Pedersen*, the plaintiff slipped and fell to the floor while playing basketball in defendant's gymnasium. Plaintiff argued that a genuine issue of fact existed with respect to whether plaintiff's injury was caused by a dusty and slippery gym floor. However, in his deposition, the plaintiff had stated that at the time of his injury the floor did not appear to be dusty, the floor did not appear or feel slippery,

and the floor seemed like it was clean and in good shape. The defendant moved for summary judgment based upon plaintiff's deposition.

In response, plaintiff filed an affidavit in which he asserted that when he returned to the scene of his injury two years after the incident with his expert witness, he began to remember that at the time of the injury the tile surface of the gym floor was dusty. The trial court granted summary judgment for the defendant. The appellate court affirmed, stating, "we find unpersuasive the plaintiff's attempt to create an issue of fact by stating in his deposition that [the floor] was not dusty, and then by contradicting himself in a later affidavit." *Pedersen*, 136 Ill. App. 3d at 176.

■■ *Pedersen* is distinguishable. Unlike the plaintiff in *Pedersen*, both of Schulenburg's contradictory statements appear in his deposition. The first and only time that the plaintiff was *directly* asked if he knew what caught his coat he responded that he did not know. At other times in the same deposition when plaintiff was asked leading and equivocal questions concerning whether the zerk caught his coat, he answered affirmatively. Taken as a whole, plaintiff's deposition testimony is inconclusive; it does not remove from dispute the question of whether his coat was caught on the zerk. This is not a case like *Pedersen*, where the plaintiff suddenly remembered a contradictory account of the events surrounding his accident in response to a motion for summary judgment.

Certainly plaintiff's statements may be used to impeach his testimony at trial and will no doubt weaken his credibility. However, the credibility of a witness is a question for the trier of fact to resolve, not a matter to be decided on a motion for summary judgment. See *Cwiertnia v. Zaborowski* (1989), 192 Ill. App. 3d 841, 846; *Andersen v. Koss* (1988), 173 Ill. App. 3d 872, 876.

We conclude that a genuine issue of material fact exists concerning whether the zerk was the proximate cause of plaintiff's injury. Therefore, the trial court erred in granting summary judgment. In light of this conclusion, we need not address the remaining contentions raised by the plaintiff.

Reversed and remanded.

GORDON, P.J., and MURRAY, J., concur.