NOTICE
Decision filed 08/01/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240370-U

NO. 5-24-0370

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MAECILYN B., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (Dana Beshears and Blaine Barker, | ) | Washington County. |
| | ) | |
| Petitioners-Appellants, | ) | |
| | ) | |
| v. | ) | No. 22-AD-4 |
| | ) | |
| Jacob Rodgers, | ) | Honorable |
| | ) | Daniel J. Emge, |
| Respondent-Appellee). | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court improperly granted summary judgment in favor of respondent where there were genuine issues of material fact regarding respondent's parental fitness.

¶ 2    Petitioners, Dana Beshears and Blaine Barker, filed a petition for adoption on January 7, 2022, seeking to adopt Dana's biological child, M.B. Petitioners also sought to terminate the parental rights of the biological father, respondent Jacob Rodgers, on grounds that he was unfit to parent the child. On June 14, 2023, respondent filed a motion for summary judgment on the issue of his unfitness to parent M.B. On October 5, 2023, the circuit court granted summary judgment in respondent's favor. Petitioners appeal, arguing that (1) the circuit court improperly granted summary judgment in favor of respondent and (2) the circuit court erred by directing petitioners

1

to pay all fees incurred by the guardian *ad litem*. For the reasons that follow, we reverse the court's order granting summary judgment and remand for further proceedings.

¶ 3                                     I. BACKGROUND

¶ 4    The record in this case is extensive, including respondent's approximately 350-page motion for summary judgment. We limit our recitation to those facts relevant to our disposition of this appeal. We will recite additional facts in the analysis section as needed to address the specific arguments of the parties.

¶ 5    Dana and Jacob were in a relationship from 2017 until late 2018. During this time, Dana became pregnant with M.B. The relationship between Dana and Jacob ended before the baby was born on March 20, 2019. Jacob attended a doctor's appointment with Dana, but he did not attend further appointments, including the birth of M.B.

¶ 6    In February of 2019, following M.B.'s birth, Jacob retained counsel, Jason Barnhart, for the purpose of establishing Jacob's parental rights. Attorney Barnhart filed a petition to establish paternity, parenting responsibilities, and parenting time, on May 31, 2019, in case number 19-F-15. Dana responded, denying Jacob was the father of M.B. The circuit court ordered a DNA test, and the results received in December of 2019 established that Jacob was M.B.'s biological father. During this time, Attorney Barnhart suffered a medical emergency and was unable to fulfill his duties to his clients. The case was essentially stagnant until January of 2022, when Jacob retained new counsel. New counsel for Jacob entered his appearance on January 4, 2022.

¶ 7    On January 7, 2022, petitioners filed the petition for adoption at dispute in this case. Petitioners alleged that Jacob was an unfit person to parent M.B. First, the petition alleged Jacob was unfit, wherein he failed to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare, pursuant to section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b)

2

(West 2022)). Second, the petition alleged Jacob was unfit in that he deserted M.B. for more than three months preceding the commencement of this proceeding (*id.* § 1(D)(c)). Finally, the petition alleged Jacob was unfit for evidencing an intent to forego his parental rights and duties by failing for a period in excess of 12 months, to visit the child, communicate with the child, or attempt communication with her, although able to do so and not prevented from doing so by an agency or court order, or have contact with the child or plan for her future, though physically able to do so (*id.* § 1(D)(n)).

¶ 8     Following unsuccessful motions to dismiss filed by Jacob, on June 14, 2023, Jacob filed a 350-page motion for summary judgment on the issue of his unfitness to parent. Jacob argued that there was no dispute as to any relevant facts. Jacob further argued that summary judgment should be granted, because there was no evidence to render him unfit by clear and convincing evidence. In support thereof, Jacob attached discovery depositions of himself, Dana, Jason Barnhart, and Dr. Paul Shawler.

¶ 9     On July 19, 2023, petitioners filed a response. Petitioners argued that based "on the pleadings, affidavits and discovery depositions filed in this cause, it is clear there is a genuine issue of fact as to whether or not [Jacob] failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." Petitioners further argued there was a "genuine issue of fact as to whether or not [Jacob] deserted the child for more than three months preceding the commencement of this proceeding." Specifically, petitioners argued that there were genuine issues of fact as to whether father visited the child, communicated with the child, attempted to communicate with the child, planned for the child's future, or was prevented from doing so.

¶ 10    On September 22, 2023, the circuit court held a hearing on the motion for summary judgment. Following argument from the parties—and no live-witness testimony—the circuit court took the matter under advisement.

¶ 11    On October 5, 2023, the circuit court issued an order granting Jacob's motion for summary judgment. The court found that the facts of the case were "essentially undisputed." The court considered whether there were any genuine issues of material fact as to whether Jacob (1) failed to maintain a reasonable degree of interest in M.B., (2) intended to forego his parental rights, and (3) deserted M.B.

¶ 12    First, the circuit court considered whether Jacob failed to maintain a reasonable degree of interest, concern, or responsibility. The court determined that the "evidence is undisputed" that Jacob had no contact with M.B. The court determined that Dana had not communicated with Jacob or responded to his messages since M.B.'s birth. The court determined that Dana blocked Jacob and his family on social media, and she did not notify Jacob of the child's birth. The court determined that Jacob was "diligent in initiating the parentage action in 2019-F-15" which was filed approximately two months after M.B.'s birth. The court noted that the "circumstances involving the injury to Barnhart and the COVID pandemic were obviously out of [father's] control." Therefore, the court determined that absent a court order, Dana's conduct precluded Jacob from visiting or communicating with M.B. The court noted that the parentage case "remained pending since May 31, 2019, through no fault of [Jacob]." The court determined that Jacob's "desire to obtain said court order has remained constant." Therefore, the court determined that petitioners could not prove by clear and convincing evidence that Jacob failed to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare.

4

¶ 13    The circuit court next considered whether Jacob was unfit in that he deserted the child for more than three months preceding the commencement of the adoption. The court noted that the three months at dispute would be October 7, 2021, through January 7, 2022. The court found it was "undisputed" that during this timeframe, Jacob "cashed out his retirement fund, and used a minimum of the $5,000 proceeds to retain his current attorney." According to the court there was "no way" that Jacob would "expend $5,000 on an attorney to pursue his desire to obtain parental responsibilities" if "his intention was to permanently terminate custody over her." According to the court, Jacob's actions "indicate the exact opposite of desertion, that his intent was to be *awarded* custody" over the child. (Emphasis in original.) As such, the court found that petitioners could not prove by clear and convincing evidence that Jacob deserted the child for more than three months preceding the commencement of the adoption.

¶ 14    Finally, the circuit court considered evidence of intent to forego parental rights. The court noted that it was undisputed that father did not visit M.B., communicate with her, or have contact with her since her birth. However, the court concluded that Dana impeded Jacob from visiting with, communicating with, or having contact with M.B. The court concluded that the "impediments were objective in nature and beyond [Jacob's] control." For these reasons, the circuit court determined that there was no genuine issue of material fact in the case. Moreover, the court concluded that Jacob was "entitled to judgment as a matter of law" because petitioners could not prove father an unfit parent by clear and convincing evidence.

¶ 15    The circuit court also addressed a petition for payment of fees filed by the guardian *ad litem* on September 19, 2023. The court noted that on September 28, 2023, Jacob filed an objection to payment of fees. Therein, Jacob did not object to the amount of fees requested. Rather, Jacob objected to an order requiring him to pay any part of the fees. In its written summary judgment

5

order, the court ordered petitioners "shall pay the entire outstanding balance" of guardian *ad litem* fees totaling $4676.85, within 30 days. The court did not offer any explanation for its decision.

¶ 16 On November 6, 2023, petitioners filed a motion to reconsider. Following a hearing on February 14, 2024, the circuit court denied the motion. This timely appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18 As an initial matter, we note our frustration with the conduct of petitioners' counsel in her flagrant violation of our appellate court rules, including timely filing of briefs. Following numerous extensions of time under curious circumstances, the brief ultimately filed by petitioners is riddled with errors and fails to comply with many of the requirements of Illinois Supreme Court Rule 341 (Oct. 1, 2020). This court is entitled to have the issues clearly defined and supported by pertinent authority and cohesive legal arguments, and it is neither the function nor obligation of this court to act as an advocate or search the record for error. *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009). The procedural rules governing the content and format of appellate briefs are not suggestions, they are mandatory. *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 18. This court has the discretion to strike an appellant's brief and dismiss an appeal for failure to comply with the applicable rules of appellate procedure. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. However, despite petitioners' disregard for the appellate rules, we believe that review of this case is important to ensure justice is expeditiously served. We recognize that the case before us involves an expedited child custody matter, and the focus of such proceedings is on the best interests of the child. See Ill. S. Ct. R. 311(a)(1) (eff. July 1, 2018). Consequently, we will decide this case based on the briefs before us despite their defects.

¶ 19    Turning to the merits, first, petitioners argue that the circuit court's order summarily dismissing petitioners' petition for adoption must be reversed, because material facts regarding respondent's fitness are in dispute. We agree.

¶ 20    This court reviews an order granting summary judgment *de novo*. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). Summary judgment should be granted only when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). To determine whether there is a genuine issue of material fact, a court will construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the opponent. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists. *Id.*

¶ 21    In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* The use of the summary judgment procedure is "a drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free from doubt." *Id.* "If the facts in the record present more than one conclusion or inference, including one unfavorable to the movant, summary judgment should be denied." *Hutchcraft v.*

*Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 357 (2000). Moreover, "the credibility of a witness is a question for the trier of fact to resolve, not a matter to be decided on a motion for summary judgment." *Schulenburg v. Rexnord Inc.*, 254 Ill. App. 3d 445, 451 (1993).

¶ 22    In the case before us, we cannot agree with the circuit court that no material issues of fact are in dispute. The facts present more than one conclusion or inference, and in this case, the circuit court engaged in significant fact-finding and determinations of credibility in rendering its grant of summary judgment. The inconsistent information adduced in the depositions of Dana and Jacob present a genuine issue of material fact regarding whether Jacob (1) failed to maintain a reasonable degree of interest, concern, or responsibility; (2) deserted M.B. for more than three months preceding the commencement of the adoption proceedings; and (3) intended to forego his parental rights.

¶ 23    First, there was conflicting evidence in the record regarding failure to maintain a reasonable degree of interest, concern, or responsibility, including, but not limited to, evidence of whether Dana blocked Jacob from contacting her. The parties disputed whether Dana blocked Jacob on social media and by cell phone. There certainly exists an issue of material fact as to whether Dana's actions precluded Jacob from demonstrating reasonable concern or responsibility.

¶ 24    Second, regarding desertion, the circuit court found that it was undisputed that Jacob cashed out a retirement account and used $5000 of the funds to retain new counsel. The court concluded that this constituted uncontroverted evidence that Jacob did not wish to permanently lose custody of M.B. However, Jacob's deposition indicated that Jacob also paid off his mortgage and a vehicle with the funds from the retirement account. In support of the motion for summary judgment, Jacob's counsel additionally argued that his failure to move forward with the case was

8

based on circumstances outside of his control, including Dana's impediments to communication, issues with Attorney Barnhart, and the COVID-19 pandemic.

¶ 25    Similarly, the record is replete with inconsistencies as to whether Jacob intended to forego his parental rights. In its ruling on summary judgment, the circuit court made factual findings that Jacob's ability to pursue his parental rights were impeded by Dana's actions, poor performance by his counsel, and the COVID-19 pandemic. However, as noted by Dana, Jacob filed his petition to establish paternity in 2019, but he failed to prosecute it until 2023. Jacob's intent is certainly a genuine dispute of material fact which should be considered by a fact-finder.

¶ 26    As to each element of unfitness, the circuit court assessed the credibility of witnesses through deposition transcripts, and essentially found in Jacob's favor. Such a finding is inappropriate at this stage of proceedings. The court engaged in fact-finding when it essentially found Jacob's version of events more credible than Dana's. As noted above, "the credibility of a witness is a question for the trier of fact to resolve, not a matter to be decided on a motion for summary judgment." *Schulenburg*, 254 Ill. App. 3d at 451. Much of this case boils down to conflicting "he said/she said" testimony as to Jacob's interest, concern, and responsibility for parenting, and such issues must be considered by the trier of fact, following testimony from the parties, and are inappropriate for a circuit court to determine on a motion for summary judgment. For these reasons, the circuit court improperly granted summary judgment in favor of respondent.

¶ 27    Next, petitioners argue that the circuit court erred by directing petitioners to pay all fees incurred by the guardian *ad litem*. In allocating the fees between parents, a circuit court should consider the financial resources of each party. *In re Marriage of Kennedy*, 94 Ill. App. 3d 537, 549 (1981). Which party precipitated the need for the fees is also factor to be considered. *Gibson v. Barton*, 118 Ill. App. 3d 576, 583 (1983). Other factors include the facts and circumstances of the

9

case; the parents' circumstances; the skill and standing of the guardian *ad litem*; the importance, novelty, and difficulty of the issues raised; the degree of management responsibility; time and labor involved; the usual and customary fees in the community; and the benefits to the client. *Id.* at 582-83. We review an allocation of guardian *ad litem* fees for an abuse of discretion. *In re Marriage of Soraparu*, 147 Ill. App. 3d 857, 864 (1986).

¶ 28    In the case before us, the record before us is devoid of any reasoning or explanation as to why the court assessed the fees in their entirety to petitioners. The court's summary judgment order simply noted that on September 19, 2023, the guardian *ad litem* filed a petition for payment of fees, and on September 28, 2023, Jacob filed an objection to an order requiring him to pay any portion of those fees. The court then ordered petitioners "shall pay the entire outstanding balance" of guardian *ad litem* fees totaling $4676.85, within 30 days. The court did not offer explanation for its decision. The court was required, at the very least, to consider evidence that either or both parties lacked financial wherewithal to pay the guardian *ad litem* fees. On remand, we direct the circuit court to set forth a clear record of its reasoning, including the financial resources of both parents.

¶ 29                                III. CONCLUSION

¶ 30    For the foregoing reasons, the judgment of the Washington County circuit court is reversed, and this cause is remanded for further proceedings.


¶ 31    Reversed and remanded.

10