QUALITY LIGHTING, INC., Plaintiff-Appellant, v. BURTON BENJAMIN *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—91—1789

Opinion filed March 27, 1992.

Jonathan E. Rothschild and Alan S. Madans, both of Rothschild, Barry & Myers, of Chicago, and Gregory B. Nokes and Chase T. Rogers, both of Cummings & Lockwood, of Stamford, Connecticut, for appellant.

Vedder, Price, Kaufman & Kammholz, of Chicago (Richard F. Zehnle and Diane M. Kehl, of counsel), for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, Quality Lighting, Inc., appeals a grant of summary judgment in favor of defendants in a case involving trade secrets. Defendants are Burton Benjamin, Lighting and Lowering Systems, Inc., Duray Fluorescent Manufacturing Co., Inc., and Esco International, Inc.

Plaintiff filed a three-count complaint to challenge the various defendants' use of technical, pricing and other information on the grounds that this information constitutes trade secrets and/or otherwise confidential information protectable under Illinois law. Plaintiff sought relief on the trade secrets issues in two separate counts, under the Illinois Trade Secrets Act (Ill. Rev. Stat. 1987, ch. 140, par. 351 *et seq.*) and under Illinois common law, respectively. A third count sought relief for breach of fiduciary duty on the part of Burton Benjamin, a former employee of plaintiff.

Defendants filed a motion for summary judgment. On May 22, 1991, the trial court granted defendants' motion for summary judgment on counts I and II of plaintiff's amended complaint. Plaintiff then voluntarily dismissed count III without prejudice and filed this timely appeal. The facts are as follows.

Burton Benjamin (Benjamin) founded Quality Lighting, Inc., a Delaware corporation, in 1965. In 1987 the assets of Quality Lighting, Inc., were sold to L.P.I. Limited Partnership, an Illinois limited partnership (LPI), and the business became the Quality Lighting Products Division (QL Products Division) of LPI. Thereafter Benjamin was employed by LPI under the terms of a November 2, 1987, employment agreement. The employment agreement contained covenants restricting Benjamin's use of confidential information connected to the business and his ability to compete.

In 1989 LPI sold the assets of its QL Products Division to Jac Jacobsen Industries, Inc., a Connecticut corporation (JJI). The current Quality Lighting, Inc. (Quality), remains a wholly owned subsidiary of JJI. Quality designs, manufactures and assembles outdoor lighting products which it markets and sells nationwide for residential and commercial use.

After Benjamin sold the business to LPI in 1987, he became and remained an employee of LPI until LPI sold the business to plaintiff in 1989. Following that sale LPI remained in the lighting business, but in areas not competitive with plaintiff. Also following the 1989 sale Benjamin became an employee of plaintiff and remained an employee of plaintiff until his resignation in November of 1989. LPI informed Benjamin that as a condition of the purchase, JJI required that Benjamin become a consultant to JJI for a term of six months.

Approximately April 3, 1989, JJI sent Benjamin an employment agreement which contained restrictive covenants regarding use of confidential information and post-employment competition. Benjamin refused to execute the employment agreement with JJI. In order to induce Benjamin to work for JJI, LPI entered into a termination agreement with Benjamin.

Benjamin also founded Lowering Systems, Inc., now known as Lighting and Lowering Systems (Lowering Systems), an Illinois corporation with its principal place of business at 2050 West Balmoral Drive in Chicago. Presently, Lowering Systems manufactures outdoor lighting fixtures and devices to raise and lower lighting fixtures. The other named defendants are Duray Fluorescent Manufacturing Co., Inc. (Duray), and Esco International, Inc. (Esco). Duray and Esco do business from the same address as Lowering Systems and are also engaged in the lighting business.

That the various defendants are using confidential information belonging to Quality appears to be undisputed. The various defendants claim a right to use the information based on a termination agreement between Benjamin and LPI and a failure of Quality to protect the information by measures required by Illinois case law construing the Illinois Trade Secrets Act.

Quality argues that the trial court erred in granting summary judgment because of the existence of numerous issues of material fact with respect to both the effect of the termination agreement and the reasonableness of the plaintiff's efforts to safeguard its confidential information.

For the following reasons, we reverse and remand to the trial court for further proceedings.

A motion for summary judgment should be granted only when the pleadings, depositions, admissions, and affidavits establish there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Sons v. Taylor* (1991), 219 Ill. App. 3d 923, 925, 579 N.E.2d 1281; see also *Breeze v. Payne* (1989), 181 Ill. App. 3d 720, 726-27, 537 N.E.2d 453, 458; *Cerniglia v. Farris* (1987), 160 Ill. App. 3d 568, 572, 514 N.E.2d 792, 794.) The purpose of summary judgment is not to try an issue of fact, but rather to determine whether a triable issue of fact exists. *Sloan v. Jasper County Community Unit School District No. 1* (1988), 167 Ill. App. 3d 867, 870, 522 N.E.2d 334, 336.

The use of summary judgment is encouraged under Illinois law as an aid to the expeditious disposition of a lawsuit. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) Yet, it is a drastic

means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. (*Sons v. Taylor* (1981), 219 Ill. App. 3d 923, 925, 579 N.E.2d 1281.) If the facts of a case permit more than one conclusion or inference, including one unfavorable to the movant, the motion should be denied. (*Cerniglia v. Farris* (1987), 160 Ill. App. 3d 568, 572, 514 N.E.2d 792, 794.) Even if the facts of the case are undisputed, if reasonable persons could draw different inferences from the facts, a triable issue exists. It is only when undisputed facts admit a single inference that the issue becomes one of law. (*In re Estate of Jessman* (1990), 197 Ill. App. 3d 414, 419, 554 N.E.2d 718, 720-21; *Practical Offset, Inc. v. Davis* (1980), 83 Ill. App. 3d 566, 570, 404 N.E.2d 516, 520.) Finally, summary judgment is particularly inappropriate where the motive, intent or subjective feelings of the parties are at issue. *In re Estate of Jessman* (1990), 197 Ill. App. 3d 414, 419, 554 N.E.2d 718, 720-21.

An appellate court reviews summary judgment orders *de novo*. (*Demos v. National Bank* (1991), 209 Ill. App. 3d 655, 659-60, 567 N.E.2d 1083, 1086.) It is the duty of the court to construe the evidence strictly against the movant and liberally in favor of the opponent. (*Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 522, 434 N.E.2d 50, 52.) A reviewing court will reverse the trial court's granting of summary judgment if it determines that a genuine issue of material fact does exist. *Cerniglia v. Farris* (1987), 160 Ill. App. 3d 568, 572, 514 N.E.2d 792, 794.

It is improper for the court to speculate in order to determine the parties' intent in granting a motion for summary judgment. (*Farm Credit Bank v. Whitlock* (1991), 144 Ill. 2d 440, 448, 581 N.E.2d 664.) "Caution must be exercised in granting summary judgment so as not to preempt the right of a party to present the factual basis of his case to the fact finder." *Farm Credit Bank v. Whitlock* (1991), 144 Ill. 2d 440, 448, 581 N.E.2d 664, citing *Chaplin v. Geiser* (1979), 79 Ill. App. 3d 435, 398 N.E.2d 628.

In their motion for summary judgment, defendants claimed that as a matter of law, Quality could not prevail on the trade secret counts for two separate reasons. First, defendants relied upon an agreement between Benjamin and LPI which stated the terms under which Benjamin's employment agreement with LPI was to be terminated (Termination Agreement). The Termination Agreement, *inter alia*, released Benjamin from certain confidentiality and noncompete covenants with LPI. Plaintiff was not a party to the Termination Agreement.

Defendants' second contention was that plaintiff had failed to use reasonable efforts to protect the confidentiality of the information that it claims to constitute trade secrets.

The trial court entered summary judgment in favor of defendants based on the Termination Agreement. The trial court found the Termination Agreement clear and unambiguous. The trial court concluded that the Termination Agreement relieved Benjamin of the non-competition clause in his original employment agreement and further that it relieved him of his obligations under the covenant regarding confidential information.

It is defendants' position that the Termination Agreement plainly and unambiguously permitted Benjamin to use the information Quality claims should be protected as a trade secret. Alternatively, Quality urges that the Termination Agreement is not clear and unambiguous and that numerous issues of material fact are present that precluded the granting of summary judgment thus requiring this court to reverse and remand to the trial court.

The Termination Agreement dated April 28, 1989, was solely between Benjamin and LPI. The agreement provides in pertinent part:

"WHEREAS, Employer has agreed to sell its 'QL Products' division to JJI Acquisition Company ('JJI') and, as a condition to JJI's purchase thereof, JJI requires that Employee become a consultant to JJI:

NOW, THEREFORE, to induce Employee to accept engagement with JJI and in consideration of the mutual covenants set forth herein, the parties hereto agree as follows:

1. Employee and Employer hereby agree that the term of employment pursuant to the Agreement shall end on April 28, 1989 instead of the date originally set forth in the Agreement ***.

* * *

4. The covenant not to compete or interfere with the business set forth in Paragraph 10 of the Agreement is hereby terminated and shall have no force or effect hereafter, and the covenant regarding Confidential Information set forth in Paragraph 9 of the Agreement shall hereafter not apply to the Confidential Information which relates to the outdoor lighting industry or the QL Products division.

5. The balance of the Agreement shall continue to apply in the same fashion as it would otherwise at the end of the term of employment except that, to the extent that any obligation which Employee owes to Employer is consistent with the obli-

gation the Employee owes to JJI (or any successor employer thereto), the Employee's obligation to JJI (or such successor employer) shall prevail."

It is noted, however, that with respect to "confidential information" the agreement refers to paragraph 9 of an employment agreement dated November 2, 1987. The November 2, 1987, agreement was not before the trial court and is not a part of the record on appeal. Prior to JJI's acquisition of LPI's QL Products Division, JJI sent Benjamin an April 5, 1989, draft of an employment agreement. In their motion for summary judgment defendants allege that the 1989 agreement contained a restrictive covenant similar to that contained in Benjamin's agreement with LPI. Paragraph 9 of the 1989 draft agreement reads:

"9. *Protection of Confidential Information.*

Employee recognizes that Employer has acquired and will be developing certain trade secrets, know-how, customer lists and marketing plans which Employer regards as confidential (collectively 'Confidential Information'). Employee agrees that upon termination of his employment for any reason he will immediately deliver to Employer all papers, books, manuals, *** correspondence and documents relating to Confidential Information as well as any other matters which may involve Employer's business, together with all copies thereof, irrespective of whether he created the same or was involved with the same, and that he will neither copy nor take any such material with him upon leaving Employer's employ. Employee further agrees that he will not at any time either while employed by Employer or after the termination of his employment reveal Confidential Information to any other person, firm or corporation, except as required by law. Confidential Information does not include information generally known in the 'lighting' industry or which has become part of the public domain other than by reason of Employee's breach of this Agreement or the information described in paragraph 10(c)."

Quality argues that contrary to the trial court's ruling, the language of the Termination Agreement is reasonably susceptible to numerous interpretations, thereby precluding summary judgment. Plaintiff admits that defendants' interpretation of the language arguably is one possibility; however, plaintiff maintains that a more plausible interpretation of the Termination Agreement is that it released Benjamin solely from the confidentiality and noncompete obligation owed to

LPI under the terms of his employment agreement with LPI, so as to permit him to work for plaintiff.

"A [document] is ambiguous if its terms are capable of being understood in more than one sense because either an indefiniteness of expression or double meaning is attached to them." (*Village of Grandview v. City of Springfield* (1984), 122 Ill. App. 3d 794, 797, 461 N.E.2d 1031, 1034.) Contracts must be "interpreted as a whole, giving meaning and effect to each provision thereof." (*Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 730, 523 N.E.2d 30, 33.) "The presence of an ambiguity in a document is a question of law; an ambiguity exists if words can be interpreted in more than one sense." (*Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 732, 523 N.E.2d 30, 35.) Whenever a contractual ambiguity is present or when contractual language is susceptible to more than one meaning, extrinsic evidence is admissible to explain or ascertain what the parties intended. *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 154 N.E.2d 683, 689.

Additionally, the parol evidence rule only applies to the parties to the written agreement. (*Rittenhouse v. Tabor Grain Co.* (1990), 203 Ill. App. 3d 639, 649, 561 N.E.2d 264.) The court in *General Casualty Co. v. Elam* (1972), 8 Ill. App. 3d 215, 289 N.E.2d 699, stated:

" 'The parol evidence rule *** prevents the parties to an integrated written contract from varying or contradicting the terms of the contract when litigating between themselves concerning their rights thereunder. However, parol evidence can be used to vary or contradict a contract when the litigation is between a party to the contract and a stranger thereto ***. This is true even where the evidence is offered by the party to the contract.' " (*General Casualty*, 8 Ill. App. 3d at 225, 289 N.E.2d at 706, quoting *Carolina Insurance Co. v. Oregon Automobile Insurance Co.* (1965), 242 Or. 407, 413, 408 P.2d 198, 201.)

The Termination Agreement was solely between Benjamin and LPI. JJI was not a party to the Termination Agreement. Therefore, parol evidence may be considered to vary or contradict the terms of the Termination Agreement.

Richard S. Weinberg was the attorney who represented LPI during the sale of LPI's assets to JJI. His affidavit provides in relevant part:

"I believe that one of the purposes of the Termination Agreement was to allow Benjamin to use the confidential information he obtained while working for my client in his new employment

with the JJI subsidiary, and that after a short period of time, he would retire. It was not my intention to create a situation in which Burt Benjamin would be free to use my client's confidential information to compete with the JJI subsidiary.

4. To my knowledge, JJI was not aware of the specific terms of the Termination Agreement, except with respect to the payments of any bonus money due Burt Benjamin."

The affidavit of C. Joseph Incrocci, vice-president of JJI, provides in part:

"JJI believed that part of the assets acquired for its wholly-owned subsidiary pursuant to the terms of its purchase agreement included benefits of Benjamin's employment agreement, including its non-compete and confidentiality provisions."

■ In the present case we are dealing with a Termination Agreement which on the one hand stated that a covenant not to compete was terminated and on the other hand indicated that the "Confidential Information set forth in Paragraph 9 shall hereafter not apply to the Confidential Information which related to the outdoor lighting industry or the QL Products division." It is not clear as to what the parties intended by said language. Moreover, since JJI was not a party to the Termination Agreement parol evidence is admissible as to the intent of the parties. We find that the Termination Agreement is not clear and unambiguous thus presenting various questions of fact and precluding the granting of summary judgment.

The trial court's ruling focused solely on the language of the Termination Agreement. However, plaintiff argued at the motion for summary judgment and maintains on appeal that plaintiff did use reasonable measures under the circumstances to protect its trade secrets and confidential information. Conversely, defendants contend that plaintiff did not take reasonable measures under the circumstances to protect its claims.

"The essential element to any relief under the law is the existence of confidential information or a trade secret." (*Service Centers of Chicago, Inc. v. Minogue* (1989), 180 Ill. App. 3d 447, 453, 535 N.E.2d 1132.) A trade secret can be generally defined as " 'a plan or process, tool, mechanism, compound, or informational data utilized by a person in his business operations and known only to him and such other limited other persons to whom it may be necessary to confide it.' " (*Televation Telecommunication Systems, Inc. v. Saindon* (1988), 169 Ill. App. 3d 8, 13, 522 N.E.2d 1359, 1363, quoting *I L G Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 92, 273 N.E.2d 393.) The Illinois Supreme Court has identified six factors to be considered in determining

whether information or materials constitute trade secrets: (1) the extent to which the information is known outside the employer's business; (2) the extent to which it is known to employees and others involved in the employer's business; (3) the extent of the measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and its competitors; (5) the money or effort expended by the employer in developing the information; and (6) the ease or difficulty with which others might properly acquire or duplicate the information. *I L G Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 93, 273 N.E.2d 393.

The legislature extended statutory protection to trade secrets by enacting the Illinois Trade Secrets Act (Act) (Ill. Rev. Stat. 1989, ch. 140, par. 351 *et seq.*). The Act defines a trade secret as follows:

" 'Trade secret' means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." (Ill. Rev. Stat. 1989, ch. 140, pars. 352(d)(1), (d)(2).)

The Trade Secrets Act defines "misappropriation" as:

"(2) disclosure or use of a trade secret of a person without express or implied consent by another person who:

* * *

(B) at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:

* * *

(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use[.]" Ill. Rev. Stat. 1989, ch. 140, pars. 352(b)(2)(B)(II), (b)(2)(B)(III).

Defendants contend that plaintiff did not take reasonable measures under the circumstance to protect its confidential information. Defendants cite the case of *Colson Co. v. Wittel* (1991), 210 Ill. App. 3d 1030, 569 N.E.2d 1082, in support of their argument. However, that case proceeded after an evidentiary hearing with the court ex-

pressly stating that an alleged termination agreement was not a part of the record.

█ Plaintiff asserts that at all relevant times, plaintiff has placed a legend on all confidential blueprints and drawings relevant to this lawsuit. The legend states that the information in the blueprints or drawings belongs to plaintiff. Plaintiff stored confidential technical information in a file cabinet located in the engineering department, which was separate from the shop area in the facility, and access to this confidential technical information was limited principally to plaintiff's engineering staff. On certain occasions such information was made available to other employees of plaintiff on a need-to-know basis. Defendants have alleged that information plaintiff claims to be confidential was widely known by plaintiff's employees. However, Benjamin's deposition testimony indicates that business reasons justified any such knowledge. Additionally, plaintiff asserts that its sales representatives and other personnel have been sensitized to watch for purchase orders for a single product because in most cases such orders signal an attempt by a competitor to obtain one of plaintiff's products for the purpose of reverse engineering that product. To prevent reverse engineering, plaintiff's sales representatives or office personnel trace small orders to determine the identity of the actual purchaser, and reject the purchase order if it was placed on behalf of a competitor.

We find that the circumstances and the reasonableness of plaintiff's efforts under those circumstances are factual issues which preclude the granting of summary judgment.

Accordingly, based on the aforecited case law relating to summary judgments, we reverse and remand the case for a hearing as to what the parties intended by the terms of the termination agreement pertaining to trade secrets.

It is ordered that the trial court's grant of summary judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

McNULTY, P.J., and LORENZ, J., concur.