BRADNER CENTRAL COMPANY, Plaintiff-Appellant and Cross-Appellee, v. FEDERAL INSURANCE COMPANY, Defendant-Appellee and Cross-Appellant.

First District (5th Division)    No. 1—91—2307

Opinion filed December 30, 1993.—Rehearing denied January 31, 1994.

Kenneth C. Miller, Ltd., of Chicago (David A. Novoselsky and Kevin S. Besetzny, of counsel), for appellant.

Hinshaw & Culbertson, of Chicago (Stephen R. Swofford, Thomas S. Malciauskas, and Marcos Reilly, of counsel), for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Bradner Central Company (plaintiff) appeals its $0 damages award rendered by the jury.

Plaintiff filed suit against Federal Insurance Company (defendant) for breach of a fidelity insurance policy and for improper claims practices. Prior to trial, the trial court entered summary judgment for plaintiff on the issue of defendant's liability for breach of the fidelity policy and on the issue of liability for losses sustained as a result of unidentifiable employee theft during the subject policy year. The sole issue of damages was left for determination at trial.

The jury returned a verdict assessing plaintiff's damages at $0. Plaintiff filed a post-trial motion which was denied. Plaintiff now appeals the jury's verdict and the trial court's denial of its motion for a new trial.

Defendant conditionally cross-appeals alleging that the summary judgment which the trial court entered in plaintiff's favor was rendered without adequate basis.

The issues presented for review are (1) whether the trial court erred by granting summary judgment for plaintiff on the issue of liability, (2) whether the trial court erred in allowing defendant to read to the jury the evidence deposition of Charles D. Richardson, Jr., and (3) whether the jury's verdict was against the manifest weight of the evidence.

We reverse and remand.

## BACKGROUND

Plaintiff company is a paper distribution business headquartered in Chicago. For about 60 years, plaintiff had a local paper-converting plant called Lakeside Central (Lakeside). Lakeside purchased raw paper in rolls, cut it, dyed it, and bound it together to produce finished paper products such as legal pads, filler paper, and stationery for wholesale distribution. The Lakeside facility began to lose money in the early 1980s and was later sold. Today, plaintiff wholesales other converters' paper products but is no longer in the paper-converting business.

Plaintiff purchased fidelity insurance for all of its operations, including Lakeside. For fiscal 1982, the year at issue, plaintiff obtained a fidelity policy from defendant insurance company. The policy covered theft up to $1 million. Theft was defined in the policy as "the unlawful taking of Money, Securities, or other property to the deprivation of the Insured." However, the policy excluded

> "loss or that part of any loss the proof of which involves in any manner (1) a profit and loss computation or comparison or (2) a comparison of inventory records with an actual physical count; provided, however, that where the Insured establishes wholly apart from such comparison that it has sustained a loss covered under Insuring Clause 1, then it may offer its inventory records and actual physical count of inventory in support of the amount of loss claimed."

At the end of fiscal year 1982, plaintiff's management noticed a discrepancy between the end-of-the-year physical inventory count and the amount of paper that should have existed according to Lakeside's records. Specifically, Lakeside allegedly suffered a loss of 543,000 pounds of paper and attributed the loss to unidentifiable employee theft. Plaintiff filed a claim under defendant's policy which defendant denied.

Plaintiff filed suit against defendant for breach of its fidelity policy and improper claims practices. Plaintiff sought $372,498, the value of the "stolen" 543,000 pounds of paper products, plus attorney fees, costs, and interest.

The evidence deposition of Charles D. Richardson (Richardson), Lakeside's president during the majority of time in question, was taken. He testified that he doubted any theft occurred because of the preventive security measures which he implemented.

Plaintiff filed a motion to bar admission of Richardson's evidence deposition to the jury. Plaintiff's position was twofold: (1) that there was no presumption that the witness was competent to give an opinion and (2) that it was incumbent upon the party offering the

witness to show that individual possessed the requisite knowledge, skill, or practical experience so as to enable him to give opinion testimony. Defendant responded by alleging that a proper foundation had been established before Richardson testified and that he had no knowledge of any large scale theft of inventory. The trial court sustained plaintiff's motion and barred defendant from reading Richardson's evidence deposition to the jury.

Defendant filed a motion to reconsider the order barring it from reading Richardson's evidence deposition to the jury arguing that, under Illinois law, if a witness is not testifying as an expert, his testimony in the form of opinion or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or a determination of a fact in issue, and that Richardson's opinions were rationally based on his own firsthand perceptions and opinions which were founded upon his personal experience. Defendant further asserted that Richardson's testimony would be helpful to the trier of fact in trying to determine whether a theft had actually occurred. The trial court reversed its previous decision and ruled that defendant could read Richardson's evidence deposition to the jury.

Plaintiff then filed a motion for summary judgment asserting that there was no genuine issue of material fact as to plaintiff's liability for breach of the fidelity policy.

Defendant responded that its evidence adequately refuted plaintiff's allegation that it wrongfully denied its claim because plaintiff insufficiently established employee theft.

The trial court entered partial summary judgment on the issue of liability for losses sustained by plaintiff due to unidentifiable employee theft during the applicable policy year. The trial court further ordered that damages, the only remaining issue, would be determined at trial. Trial ensued, the jury returned a $0 verdict for plaintiff, and plaintiff appealed. Defendant cross-appealed.

OPINION

I

Defendant, on cross-appeal, contends that the trial court wrongfully granted summary judgment on the issue of liability in plaintiff's favor. We agree.

Appellate courts apply a *de novo* standard when reviewing summary judgment rulings. (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102, 607 N.E.2d 1204; *Neimiec v. Roels* (1993), 244 Ill. App. 3d 275, 277, 614 N.E.2d 356.) Summary

judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) The purpose of summary judgment is not to try an issue of fact, but rather to determine whether a triable issue of fact exists. (*Quality Lighting, Inc. v. Benjamin* (1992), 227 Ill. App. 3d 880, 883, 592 N.E.2d 377.) Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied. *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358-59, 543 N.E.2d 1304.

While the use of summary judgment is encouraged under Illinois law as an aid to the expeditious disposition of a lawsuit *(Purtill,* 111 Ill. 2d at 240), it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. (*Quality Lighting,* 227 Ill. App. 3d at 883-84.) Thus, caution must be exercised in granting summary judgment so as not to preempt the right of a party to present the factual basis of her case to the fact finder. (*Quality Lighting,* 227 Ill. App. 3d at 884.) Further, even if the facts of the case are undisputed, if a reasonable person could draw different inferences from the facts, a triable issue exists (*Quality Lighting,* 227 Ill. App. 3d at 884), and summary judgment should not be granted.

In the present case, plaintiff filed a motion for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005) alleging that there was no genuine issue of material fact that defendant had breached its insurance contract with plaintiff and had engaged in improper claims practices by refusing to pay plaintiff's claim. Plaintiff supported this motion with a copy of the insurance policy issued to it by defendant; a copy of the discovery deposition of John Tomaine (Tomaine), an attorney who worked at Chubb & Son, Inc., and was hired by defendant to investigate plaintiff's claim; and a copy of the discovery deposition of David A. Borghesi (Borghesi), a certified public accountant and partner at Arthur Andersen & Co., who was retained by defendant to review certain documents provided to defendant by plaintiff prior to the denial of plaintiff's claim.

During his deposition, Tomaine testified that the policy covered theft by unidentifiable employees but that the insured had to substantiate that the loss could only have occurred as a result of employee theft. He further stated that the burden of proving the loss was not defined in the policy, but rather depended on the situation and varied from case to case and from insured to insured. Tomaine stated that the law firm of Hinshaw & Culbertson recommended that plaintiff's claim should probably be denied.

Tomaine further testified that plaintiff's claim was ultimately denied because it fell within the terms of section 4.6(E), the inventory computation exclusion. Although inventory computation was not defined in the policy, Tomaine defined the term as being a numerical analysis of the insured's inventory.

Borghesi testified at his deposition hearing that Arthur Andersen had been retained by defendant solely to quantify the loss at Lakeside and not to determine how much material had been taken, who had taken it, or how it was taken. He did not calculate in any fashion the number of pounds lost by plaintiff or a dollar value of the merchandise lost by plaintiff.[1] He found three discrepancies with the pounds analysis: (1) a clerical error in the listing of raw materials, (2) a discrepancy between what was used in the pounds analysis and a monthly billing report which aggregated to a different number of pounds than that which was used in the pounds analysis, and (3) a discrepancy in the consistency of information provided to him. Borghesi further indicated that a number of items were open for investigation.

As stated earlier, the trial court granted summary judgment in plaintiff's favor on the issue of defendant's liability to plaintiff for the losses plaintiff sustained due to unidentifiable employee theft during the period of the policy issued by defendant to plaintiff. "Damages" was the sole issue to be determined at trial.

However, at trial, the trial court, even though it purportedly adjudicated the issue of liability, nonetheless allowed both parties to submit a plethora of evidence on the issue of liability rather than damages. Testimony elicited on both sides was excessive.

For example, plaintiff's counsel read portions of Tomaine's deposition testimony into evidence. Such testimony indicated that defendant had no evidence to suggest that plaintiff's loss was due to some cause other than employee theft, and that it was unnecessary for an insured to observe or catch the employee or employees involved in the theft in order to recover from defendant under a fidelity policy. This evidence went towards the issue of liability, which purportedly was not at issue.

Bernard Joseph Tarte (Tarte), plaintiff's witness, was vice-president, and treasurer of the Bradner Central Company. Tarte testified at plaintiff's counsel's behest about the alarm system, whether there were any break-ins, inventory discrepancies, and the magnitude of such discrepancies. He also testified that only employee

---

[1]Plaintiff hired an accountant who implemented a pounds analysis in determining the amount of loss due to employee theft.

theft could account for the 1982 variance. Tarte discussed the FBI's involvement and the use of an undercover private investigator.

Tarte also briefly mentioned some possible "leads" that came to his attention during his investigation: finished paper goods from Lakeside showed up at Chicago area flea markets, a Lakeside employee had a small stationery store and some Lakeside products were being sold there, the FBI thought something was not right in the shipping department and set up a "sting" operation which was thwarted, and Drob found some quantities of Lakeside filler paper without brand identification stored in the plant. Tarte also theorized that an order picker in the plant might have put more merchandise on a truck than required and then passed it to an outside accomplice, stealing the product off of the loading dock.

On cross-examination, Tarte stated that he could not identify when during fiscal 1982 the finished paper had been "stolen." He also retracted his earlier statement that the conspiracy had occurred in the shipping department to say that perhaps the people preparing manufacturing tickets had been involved by duplicating manufacturing tickets. He conceded that anyone in the plant could have been involved.

Tarte was also cross-examined on several of the private investigators' reports he had introduced. One such report, dated March 24, 1982, provided:

"During this time the agent learned that on February 25, 1982 the agent pulled an order for Holland Trucking. The count was for 183 cartons, which was correctly counted by the agent. According to the client who received the order, he got 30 cartons of product which were not ordered by him. He had ordered 183 cartons and had received 183 but 30 [more], which were correctly stenciled with the client's name and address, were not ordered by him. Whitey questioned the agent about the matter. The agent said the handwriting was his but he could not remember what the order consisted of at the time."

Tarte did not discuss the matter with anyone and did not conduct an investigation to determine how the 30 extra units could have been shipped by the agent.

Another private investigator's report, dated March 12, 1982, was also called to Tarte's attention:

"The agent returned to work and worked steadily on his own. He observed Howe weighing the rolls which were received earlier. He weighed 25% of the load and found one roll short by 39 pounds. According to standard procedure he was to weigh all the remaining rolls if a shortage of weight was found. Whitey said to weigh just one more roll and record the short roll as being a few pounds off."

Tarte could not explain this incident either. However, he admitted that the total quantity of Lakeside product seen in local flea markets amounted to no more than 2,000 pounds and that even the FBI was unable to trace this product back to theft. He also stated that the product seen inside the plant without identifying labels was observed in 1983, not 1982. Tarte testified that slightly damaged or excess Lakeside product was sold to employees at reduced prices and that the employee who had been selling Lakeside products at his own store had said he bought those products legitimately at the plant and had never been disciplined. He also admitted that for loading dock employees to have stolen the paper, they would have had to abscond with an average of more than a ton of paper every day.

■ Such testimony introduced by both sides make this case replete with error. Given the contents of the insurance policy and the deposition testimonies of Tomaine and Borghesi, it defies logic that the trial court determined that no genuine issue of material fact existed as to defendant's liability. If all of the factual issues pertaining to liability had, indeed, been determined by summary judgment, the evidence admitted at trial would have referred solely to damages. The evidence and testimony elicited here rested on the issue of liability.

Moreover, in examining the deposition testimony and pleadings, we find that the deposition testimony did not resolve the issue of liability. Liability was still at issue.

Although the trial court erroneously entered summary judgment in plaintiff's favor, which requires reversal and remand for a new trial, we will discuss plaintiff's claim regarding Richardson's deposition testimony.

## II

Plaintiff contends that the trial court erred by allowing Richardson's evidence deposition testimony to be read into evidence. We agree.

■ Supreme Court Rule 220(a)(1) provides that an expert is

"a person who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion within his expertise at trial." 134 Ill. 2d R. 220(a)(1).

A witness' opinion may be admitted as evidence if it is rationally based on perception (*Scheibel v. Groeteka* (1989), 183 Ill. App. 3d 120, 131-32, 538 N.E.2d 1236), if it is of assistance to the trier of fact, and if such opinion testimony does not elicit inferences and conclusions which can be drawn by the jury as well as the witness. *Freeding-*

*Skokie Roll-Off Service, Inc. v. Hamilton* (1985), 108 Ill. 2d 217, 221, 483 N.E.2d 524.

At his deposition hearing, Richardson testified that the FBI and private investigative agencies had been retained to investigate perceived theft problems that predated his contact with Lakeside; that he was hired by mandate of the chairman of the board to preclude theft and in response to the perceived theft problem; that he was in charge of Lakeside's entire operation during fiscal year 1982 for all except three to four weeks; that once he became president, he implemented security measures such that the plant was "almost like an armed camp;" that supervision was changed to prevent thefts at the loading docks; that the employees were not sophisticated enough to steal 543,000 pounds of paper given the preventive security measures which he implemented; and that he did not believe that any theft occurred.

■ The trial court erroneously permitted Richardson's deposition testimony to be read to the jury. Richardson was not an expert and the only issue purportedly before the jury should have been limited to damages, not liability. Such testimony not only invaded the province of the jury but was equally of no assistance. The admission of Richardson's evidence deposition testimony constituted reversible error.

For the foregoing reasons, we hold that the entry of summary judgment on the issue of liability in favor of plaintiff constituted reversible error. We further hold that the trial court erred by allowing Richardson's deposition testimony to be read into evidence.

### III

Because of our disposition of this case, we consider it unnecessary to discuss plaintiff's assertion that the jury verdict was against the manifest weight of the evidence.

Judgment reversed and remanded.

McNULTY, J., concurs.

JUSTICE MURRAY, specially concurring:

I concur in the majority's conclusion, but not entirely with its reasoning.

The issue of whether the jury's verdict is against the manifest weight is not addressed by the majority. Plaintiff's evidence indicates a loss of $372,498 as determined by a method contained in Federal's policy of insurance and testified to by a certified public accountant from Arthur Andersen. There was no contrary evidence. I would re-

verse and order a new trial for the reason that the verdict is against the manifest weight of the evidence.

Further, I disagree with the majority on Richardson's evidence deposition testimony. Richardson's testimony by Judge Trafelet's order of June 19, 1991, was admitted, but as Bradner's former chief operating officer. The able trial judge admitted the testimony even though the opinion may focus on the ultimate issue. The admission of such testimony was in accordance with the modern trend. *Miller v. The Pillsbury Co.* (1965), 33 Ill. 2d 514, 516, 211 N.E.2d 733.