2023 IL App (1st) 220309

No. 1-22-0309

Opinion Filed: March 31, 2023

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| LAURA WONG, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| Plaintiff-Appellant, | ) | |
| | ) | No. 2020 L 000131 |
| v. | ) | |
| | ) | The Honorable |
| MIDWEST GAMING & ENTERTAINMENT LLC, | ) | Michael F. Otto |
| | ) | Judge Presiding |
| Defendant-Appellee. | ) | |

_____

JUSTICE C.A. WALKER delivered the judgment of the court with opinion.
Justices Oden Johnson and Tailor concurred in the judgment and opinion.

OPINION

¶ 1     Plaintiff Laura Wong filed a complaint against her former employer, Midwest Gaming & Entertainment LLC (Rivers), claiming sexual harassment pursuant to the Illinois Human Rights Act (Act), 775 ILCS 5/ (West 2018). The trial court granted summary judgment in favor of Rivers. On appeal, Wong argues the trial court erred in granting summary judgment because the evidence demonstrated she suffered third party sexual harassment due to the cumulation of customer sexual harassment that was severe and pervasive enough to create a hostile work environment. Wong also argues Rivers failed to promptly implement reasonable corrective measures to prevent sexual

harassment, and questions of whether the actions taken by Rivers were reasonably corrective are meant for a jury. After examining the evidence in a light most favorable to Wong, we hold that a reasonable jury could conclude that the measures taken in response to Wong's sexual harassment claims were not reasonably corrective. For the following reasons, we reverse and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3      Rivers Casino in Des Plaines, Illinois, hired Laura Wong as a beverage server on February 13, 2015. Wong was occasionally assigned to work the beer tub, a stand-alone beverage serving station located in the middle of the casino floor to accommodate her after suffering a wrist injury. Upon being hired, Wong received a copy of the Rivers Team Member Handbook that contained an anti-harassment and anti-discrimination policy, which stated in part that harassment "by another team member, supervisor/manager or third party for any reason" was prohibited.

¶ 4      On July 6, 2018, Wong was working the beer tub when a male customer walked to the side of the tub and asked her out. The customer did not touch Wong, but she thought his conduct was offensive and made her uncomfortable. Kawasi Brown, a food and beverage supervisor, saw the customer talking to Wong behind the beer tub. He walked over and told the customer he was not permitted behind the beer tub and the customer complied. Brown also placed a garbage can at an angle near the tub so that no one else could come behind the tub.

¶ 5      The following day on July 7, 2018, Wong sent a message to her supervisor, Eric Garcia, on Facebook asking for a retractable belt barrier to be placed at the beer tub. Garcia said no because he believed it would look "tacky." Instead, Garcia suggested moving the tub but said he would use

stanchions if they could not move the tub. That evening during her shift, no stanchions were placed on the side of the tub and Wong alleged more customers came behind the tub.

¶ 6    During Wong's shift on July 13, 2018, two men walked around the beer tub and hugged Wong in a way that made her uncomfortable. Wong stated that one of the men mentioned that he "wished he wasn't married and [asked] if [Wong] would go out with him." After the interaction with the two men, Wong reported the incident to Rebecca Van Aman, a food and beverage supervisor. Wong asserts that Aman said she would see what she could do and look into a way to block the beer tub. Following her break, one of the men returned and approached her behind the beer tub. Another employee witnessed the incident and moved a garbage can next to the beer tub to block off customers. There were no other incidents during that shift.

¶ 7    The next day during Wong's shift, a male customer walked around the beer tub, hugged her, and kissed her on the cheek. Wong claims that the customer also stated he wished she [were] not married. Wong backed away, and the customer returned to the other side of the beer tub. After the incident, Wong informed Brown of what happened. Brown instructed Wong to tell the guests "no" and report the incident if the guests continued. Later in the shift, another customer walked by and pinched her waist while standing on the side of the beer tub, but she did not report this incident. Wong reported the previous incident to Wesley Chow, the security supervisor. Chow asked Wong if she wanted the customer evicted, and Wong explained she just wanted him to stop. Chow identified the customer using surveillance footage, prepared an "incident file summary report," and sent an email recapping his discussion with Wong to Marne Deithorn, Director of Human Resources.

¶ 8    The following morning in an email to his supervisors summarizing the shift, Brown stated:

"Laura from beer tub asked me to use the garbage can to block the entrance to her beer tub to stop guests from getting too close to her. She told me that occasionally guests will try to get behind her beer tub to give her a hug or just to get closer to her. I told her that even though she's a server and her job allows her to get in close interaction with guests, she need to maintain control of her personal space and if for any reason she feels harass by anyone she need to inform a supervisor so we can call security and have them to handle the situation accordingly. I also made it clear to her that using a garbage can to block her in is not an appropriate way to handle the situation and if she feels she was harassed by a guest she needs to let us know and identify the guest so we can inform security. She did not identify any particular guest/personnel; instead, she tried to twist my words by implying that I will not do what's necessary to protect her from being harass. I made it clear to her that she need to inform us supervisors of any guest/guests that she feels harassed by so we can inform security for them to handle it"

¶ 9     On July 18, 2018, Paula Michalek, the beverage operations manager, sent an email instructing team members to permanently place two stanchions at each beer tub in the casino. Deithorn also apologized to Wong and told her that the customer who kissed her would be "handled." Wong saw the customer who previously kissed her in the casino on September 2, 2018, and informed Rudy Arreola, the security supervisor. Arreola confronted the customer and informed him that, due to complaints made against him, he was suspended from the casino for 14 days pending further review. Four days later, Rivers informed the customer that he was suspended from the casino for one year and would be subject to arrest if he should return before that time.

¶ 10    Wong continued to work at Rivers until December 11, 2019, when she decided to resign. On January 3, 2020, Wong filed a complaint asserting third-party sexual harassment and retaliation under the Act. Rivers moved for summary judgment on both claims, which the trial court granted. When ruling on the sexual harassment claim, the trial judge stated:

> "There was an incident on July 6th after which there was prompt action taken, and there was a permanent corrective measure put in place eight days later once another incident or two -- three, I should say, had occurred. I don't see how that can be found not to be prompt action especially in light of the fact that action was taken, although as I pointed out to Mr. Leech, when the subsequent incidents happened, the corrective action was taken only after the incidents happened on the subsequent shifts. That's true still. I think it was -- I cannot see any reasonable jury concluding that Rivers acted unreasonably by taking eight days to put a permanent solution in place once there had been more than one incident. Really it was seven days after the second incident. I just don't -- I don't see how a jury could conclude otherwise. I don't see an issue of fact on reasonableness, although I will note it is true that ordinarily reasonableness of corrective action being something more of a judgment call is often an issue for the jury. That is true. Here, given the undisputed facts, I believe that there is only one result that can reasonably be reached"

Wong now appeals the grant of summary judgment in favor of Rivers.

¶ 11                                II. ANALYSIS

¶ 12    On appeal, Wong first argues the trial court erred in granting summary judgment because the evidence demonstrated she suffered third party sexual harassment due to the cumulation of customer sexual harassment that was severe and pervasive enough to create a hostile work

environment. Wong also argues Rivers failed to promptly implement reasonable corrective measures to prevent sexual harassment, and questions of whether Rivers' actions were reasonably corrective are meant for a jury.

¶ 13     When ruling on a motion for summary judgment, the trial court does not resolve questions of fact. Instead, the trial court determines whether genuine issues of material fact exist. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004) Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2010). "In determining whether a genuine issue of material fact exists, a court must construe the pleadings *** strictly against the movant and liberally in favor of the opponent." *Id.* at 43. "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* We review *de novo* whether the entry of summary judgment is appropriate. *Id.*

¶ 14     The Act defines sexual harassment as "any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when * * * such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." 775 ILCS 5/2–101(E) (West 2018). The Act also provides:

> "It is a civil rights violation: For any employer, employee, agent of any employer, employment agency or labor organization to engage in sexual harassment; provided, that an employer shall be responsible for sexual harassment of the employer's employees by

nonemployees or nonmanagerial and nonsupervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures." 775 ILCS 5/2–102(D)

¶ 15     "The prohibition of sexual harassment found in the Act closely parallels that found in Title VII, and therefore, examination of Federal law is appropriate." *Trayling v. Board of Fire and Police Commissioners of the Village of Bensenville,* 273 Ill. App.3d 1, 11 (1995). For sexual harassment to be actionable under Title VII, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405 (1986) (quoting *Henson v. Dundee,* 682 F.2d 897, 904 (11th cir.1982)).

¶ 16     To determine the existence of a hostile work environment sufficient to sustain a sexual harassment claim, a plaintiff must establish that plaintiff: (1) was subjected to unwelcome sexual conduct, advances, or requests; (2) because of plaintiff's sex; (3) the conduct was severe or pervasive enough to create a hostile work environment; and (4) there is a basis for employer liability. *Erickson v. Wisconsin Dep't of Corr*., 469 F.3d 600, 604 (7th Cir. 2006). A sexual harassment claim based on a hostile work environment is often comprised of a series of incidents rather than a single event. *Sangamon Cnty. Sheriff's Dep't v. Illinois Human Rights Comm'n,* 233 Ill.2d at 141–42 (2009).

¶ 17     The undisputed facts in the record demonstrate that the patrons subjected Wong to unwelcome sexual conduct because of her sex. The record shows that a male customer walked around the beer tub, hugged her, and kissed her on the cheek. Another customer walked by and pinched her waist while she was standing next to the beer tub.

¶ 18    To determine whether conduct is severe or pervasive enough to be actionable, several factors should be considered, including: "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Cook County Sheriff's Office v. Cook County Comm'n on Human Rights*, 2016 IL App (1st) 150718, ¶ 32 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 114 S.Ct. 367 (1993)). "[T]he 'mere utterance of an *** epithet which engenders offensive feelings' is insufficient to constitute harassment." *Id.* (quoting *Harris*, 510 U.S. at 21-22). The court must also consider how offensive a reasonable person would deem the conduct to be. *Lambert v. Peri Formworks Sys., Inc*., 723 F.3d 863, 868 (7th Cir. 2013).

¶ 19    Wong argues that the cumulation of customer sexual harassment was severe and pervasive enough to create a hostile work environment because Rivers did not take reasonable corrective measures. She also asserts the trial court erred when it substituted its judgment for that of a jury. In response, Rivers contends that Wong cannot establish a *prima facie* case because the conduct complained of is neither severe nor pervasive enough to create a hostile work environment, and they did take reasonable corrective measures.

¶ 20    Wong is not alleging severe or pervasive conduct by Rivers or its agents, but instead by the customers who visited the casino. Under the Act, "an employer shall be responsible for sexual harassment of the employer's employees by nonemployees or nonmanagerial and nonsupervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures." 775 ILCS 5/2-102(D) (West 2018). Because Wong alleges third-party sexual harassment and not harassment by Rivers or its agents, we need only examine whether Rivers took reasonable corrective measures to address the harassment.

¶ 21    Wong alleged five separate incidents of sexual harassment that occurred over the course of eight days. Three of those incidents involve some form of physical contact, including a hug, a kiss on the cheek, and Wong's waist being pinched. Each incident that Wong alleged involved different male customers. Rivers responded by placing a garbage can around the beer tub to block off customers, and Rivers set permanent stanchions around all the beer tubs after the July 13th incident. Rivers also evicted the customer that Wong accused of kissing her on the cheek. Wong attested that initially, the measures Rivers took were effective. Wong now argues that the measures were ineffective because the evicted customer returned before the one-year suspension ended.

¶ 22    Wong argues there is a genuine issue as to whether the corrective measures taken by Rivers were reasonable because the sexual harassment experienced was an immediate threat and continued to escalate in severity until stanchions were in place. Wong does not dispute any material facts but argues that a reasonable person might draw a different inference from the corrective measures taken by Rivers. Under the Act, an employer is not automatically responsible for the harassment of its employees but will be held responsible where it does not take reasonable corrective measures. *Village of Bellwood Board of Fire and Police Commissioners v. Human Rights Comm'n,* 184 Ill. App. 3d 339, 350 (1989); (775 ILCS 5/2-102(D) et seq. (West 2018)).

¶ 23    Wong cites *Clifford v. Wharton Bus. Group, L.L.C.*, 353 Ill. App. 3d 34, 38 (1st Dist. 2004) to argue "whether a defendant acts reasonably is a question of fact for a jury." We find *Clifford* inapposite because it involved a negligence action against a general contractor for injuries sustained on a construction site. Furthermore, *Clifford* does not stand for what Wong asserts. Instead, *Clifford* found that whether an employer breached its duty of reasonable care is a question

of fact for the jury. *Id*. at 47; See also *Deibert v. Bauer Bros. Const. Co., Inc*., 141 Ill. 2d 430, 445 (1990).

¶ 24     Wong also cites *Passananti v. Cook County*, 689 F.3d 655 (7th Cir. 2012) to claim that "[q]uestions of whether the […] exercised reasonable care to prevent and correct sexual harassment, and […], were for the jury." We also find this case inapposite because *Passananti* involved a posttrial motion for judgment as a matter of law, not summary judgment. The plaintiff in *Passananti* sued her former employer, alleging sexual harassment and wrongful termination. *Id* at 658. Following a jury verdict in favor of plaintiff, the federal district court granted defendant's motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure. *Id* at 659. "Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Id*.

¶ 25     The seventh circuit held that the jury verdict on the sexual harassment claim must be reinstated because the district court erred by resolving both the question of sexual harassment and the affirmative defense in favor of defendants as a matter of law where there was ample evidence to support the jury's verdict. *Id* at 674**.** The *Passananti* decision does not concern whether the exercise of reasonable care is a question for the jury. Instead, it considered whether there was ample evidence to sustain a jury verdict.

¶ 26     Here, we recognize that abuse in the workplace and many other places, once passively accepted, now offends society's standards of decency. See *Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015) (holding that in view of the changing standards of human decency, an inmate may state a claim if a corrections officer's intentional contact with an inmate's genitalia or other intimate area

serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate).

¶ 27 "Whether one acted reasonably is a question of fact to be decided by the trier of fact, but when the facts are undisputed and reasonable minds cannot disagree, the issue may be determined as a matter of law." *Lindquist v. Chicago & Nw. Transp. Co.*, 309 Ill. App. 3d 275, 283 (2d Dist. 1999). It is undisputed that Rivers placed garbage cans around Wong's beer tub after reported harassment, placed stanchions next to the beer tub as a permanent solution, and evicted the customer that kissed Wong after he was identified. However, reasonable minds may disagree on whether the actions taken by Rivers were reasonably corrective measures. Wong initially asked that stanchions be placed around the tub. Instead, Rivers placed garbage cans to block off customers. Due to the simplicity of placing stanchions around the beer tub and the fact that garbage cans are not intended to serve as barriers, a reasonable jury could conclude that Rivers' actions were not reasonable.

¶ 28 Viewing the evidence in the light most favorable to Wong, we find that the reasonableness of the efforts to correct the sexual harassment is a factual issue precluding summary judgment. *Quality Lighting, Inc. v. Benjamin,* 227 Ill. App. 3d 880, 889-90 (1992). Accordingly, we hold that summary judgment in favor of Rivers was improper, and the ruling of the trial court is reversed and remanded for further proceedings.

¶ 29                                III. CONCLUSION

¶ 30 For the foregoing reasons, the judgment of the trial court is reversed, and the cause is remanded.

¶ 31 Reversed and remanded.

---

*Laura Wong v. Midwest Gaming & Entertainment LLC.*, **2023 IL App (1st) 220309**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020 L 000131; the Hon. Michael F. Otto, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Evan M. Smola, Kaya Mazon, of Hurley McKenna & Mertz, P.C., for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kathryn M. Moran, J. Casey Leech, of Jackson Lewis, P.C., of Barrington, for appellee. |

---